1   **WO**

 

                              ☒ FILED     ___ LODGED

2                            ___ RECEIVED  ___ COPY

 

3                                **OCT 0 3 2011**

4                     **CLERK U S DISTRICT COURT**

                          **DISTRICT OF ARIZONA**

5                     BY_____ DEPUTY

6                  IN THE UNITED STATES DISTRICT COURT

7                     FOR THE DISTRICT OF ARIZONA

8

9   IN RE Mortgage Electronic Registration)    MDL DOCKET NO. 09-2119-JAT

    Systems (MERS) Litigation          )

10   _____ )   **ORDER**

11

12        Before the Court are eleven motions to dismiss Plaintiffs' Consolidated Amended

13   Complaint (CAC) for failure to state a claim under Rule 12(b)(6) brought by various

14   defendants. The motions move to dismiss all seventy-two member cases which were directed

15   to join the CAC.[1] After the motions were fully briefed, the Court heard oral argument on

16   August 31, 2011. For the reasons that follow, the Court will dismiss the CAC in its entirety

17   and the associated seventy-two member cases.

18                     **BACKGROUND**

19        This case is a multi-district litigation ("MDL") concerning claims related to the

20   formation and operation of Mortgage Electronic Registration Systems, Inc. and MERSCORP,

21   Inc. (collectively, the "MERS system"). In the initial transfer order, the Panel transferred to

22   this Court all allegations within these actions that "the various participants in MERS formed

23   a conspiracy to commit fraud and/or that security instruments are unenforceable or

24   foreclosures are inappropriate due to MERS's presence as a party" or that otherwise concern

25   the "formation and operation" of MERS. (Doc. 1.) However, the Panel simultaneously

26   remanded unrelated claims to their transferor courts, finding that "plaintiffs' claims relating

27   _____

28       [1] The member cases are enumerated on pages 20-23 of this Order.

to loan origination and collection practices do not share sufficient questions of fact with claims regarding the formation and operation" of MERS and their inclusion "would needlessly entangle the litigation in unrelated, fact-intensive issues." *Id.*

Accordingly, this Court has not retained claims that, although naming MERS as a defendant, allege conduct primarily related to loan origination and collection practices, or otherwise stray from the common factual core of the MDL. *See*, *e.g.*, Doc. 409 interpreting the Panel's transfer orders.

Defendants then moved to dismiss the transferred claims. At successive rounds of oral argument, the Court considered motions to dismiss in twenty member cases and in each one dismissed Plaintiffs' complaints in their entirety for failure to state a claim upon which relief can be granted. (Doc. 1170, 1247.) As many of the claims were similar to the complaints of other member cases, further proceedings on the pending motions to dismiss would have been largely cumulative of what had gone before. Accordingly, the Court dismissed the Plaintiffs' pending complaints in an additional fifty-two member cases and granted Plaintiffs leave to file a consolidated amended complaint. (Doc. 1413.)

On June 4, 2011, Plaintiffs filed their Consolidated Amended Master Complaint ("CAC"). Plaintiffs allege violations of Arizona Revised Statutes ("A.R.S.") § 33-420 (Count I), the tort of wrongful foreclosure (Count II), violations of Nevada Revised Statutes ("NRS") § 107.080 (Count III) and Oregon Revised Statutes ("O.R.S.") § 86.735 (Count IV), allegations of aiding and abetting wrongful foreclosure (Count V), aiding and abetting predatory lending (Count VI), unjust enrichment (Count VII), and slander of title (Count VIII), violations of O.R.S. § 646.607 (Count IX), and South Carolina Code of Laws ("S.C. Code Ann.") § 39-5-10 (Count X). They also seek declaratory relief (Count XI) and injunctive relief (Count XII).

As relief, Plaintiffs demand (1) damages; (2) attorneys' fees and costs; (3) rescission; (4) restitution; (5) a temporary restraining order and preliminary and permanent injunctions prohibiting foreclosure, eviction, collection, and transfer of interest related to the residences

of Plaintiffs and class members; (6) a declaratory judgment that Plaintiffs' rights were violated, that the class members' notes have been rendered unsecured, and that the class members' loans shall be delisted from the MERS system; (7) a quiet title order as to certain Arizona properties; and (8) pre-judgment interest.

The following Defendants have filed motions to dismiss: National Default Servicing Corporation (Doc. 1449), TD Service Company (Doc. 1450), I.B. Property Holdings LLC. (Doc. 1451), NDex West LLC (Doc. 1453), Western Progressive Trustee LLC (Doc. 1456), Aztec Foreclosure Corporation and National Default Servicing Corporation (Doc. 1475), Federal Housing Finance Agency (Doc. 1476), Mortgage Electronic Registration Systems, Inc., MERSCORP, Inc. and others[2] (Doc. 1477), Aurora Loan Services LLC (1481), Old Republic National Title Insurance Company (Doc. 1483) and MTC Financial Inc. (Doc. 1488).  Several defendants filed joinders to MERS' motion (Doc. 1473, 1478, 1479, 1480, 1482, 1484, 1485, 1487) and California Reconveyance Company filed a "Supplemental Memorandum in Support" of the Joint Motion (Doc. 1488).  Plaintiffs filed four responses (Doc. 1515, 1516, 1517, 1518) and Defendants replied (Doc. 1529, 1530, 1531, 1532, 1533, 1534, 1535, 1538, 1540, 1541, 1544, 1547) or joined replies (Doc. 1545, 1546).

## LEGAL STANDARD

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 7129, 732 (9th Cir. 2001).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 129 S.Ct. at 1949.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

---

[2] *See* Doc. 1477, at 3-4 for list of co-moving defendants.

1      "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

2  detailed factual allegations, a plaintiff's obligation to provide the grounds of entitlement to

3  relief requires more than labels and conclusions, and a formulaic recitation of the elements

4  of the cause of action will not do." *Twombly*, 550 U.S. at 545 (internal quotations, citations

5  and alterations omitted). "Determining whether a complaint states a plausible claim for relief

6  . . . [is] a context-specific task that requires the reviewing court to draw on its judicial

7  experience and common sense.  But where the well-pleaded facts do not permit the court to

8  infer more than the mere possibility of misconduct, the complaint has alleged-but it has not

9  'show[n]'-'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed. Rule.

10  Civ. P. 8(a)(2)) (citation omitted).

11      Under Rule 9(b), plaintiffs have an even higher pleading standard in all allegations

12  of fraudulent conduct, especially in multi-defendant cases such as these.  The Ninth Circuit

13  has repeatedly emphasized that "Rule 9(b) does not allow a complaint to merely lump

14  multiple defendants together but require[s] plaintiffs to differentiate their allegations when

15  suing more than one defendant . . . and inform each defendant separately of the allegations

16  surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 765

17  (9th Cir. 2007) (internal citation omitted).

18                           **GENERAL DISCUSSION OF MERS**

19      As a general matter, MERS is a wholly owned subsidiary of MERSCORP, a Virginia

20  corporation.  Various of the named defendant banks and lending institutions are shareholders

21  in MERSCORP and participants in the MERS system.  Under the MERS system, at the

22  origination of a residential loan, the lender takes possession of a promissory note and the

23  borrower and lender agree to designate MERS as the beneficiary under a deed of trust.

24  Under the MERS system, the rights to the mortgage are tracked in an internal electronic

25  database and not recorded in the public records each time the rights to the mortgage are

26  bought and sold, so long as the buyer is a member of the MERS system.

27

28

Fundamentally, all of Plaintiffs' claims turn on their contention that naming MERS as a beneficiary on the deeds of trust, and the subsequent operation of the MERS system, splits the MERS deeds of trust from their promissory notes and renders these notes unsecured and unenforceable. Plaintiffs summarize their case in their Response to MERS' Motion to Dismiss:

> Plaintiffs have advanced three theories basic to real property law. First, to foreclose on a deed of trust you need to be a beneficiary. MERS is not and never has been. Second, to foreclose the deed of trust must be a valid enforceable security instrument. The MERS Deeds of Trust are not and never were because they never named a valid beneficiary and were split from the note they were supposed to secure at the time of their creation. Finally, third, if MERS was actually in possession of some right as an agent under the deed of trust, its attempted assignment was ineffective because only the true beneficiary (principal) can make such an assignment.

Doc. 1515 at 49. Everything in this case turns on these three theories. The documents alleged to be false would only be false if there is legal merit to these arguments; the wrongful foreclosures would only be wrongful if one of these theories holds.[3]

*A. Plaintiffs Maintain All Non-Judicial Foreclosures Under MERS Deeds of Trust Are Invalid.*

Plaintiffs maintain that all MERS is not a true beneficiary and cannot foreclose under the deeds of trust. However, none of the cases cited by Plaintiffs support their theory that naming MERS as the beneficiary completely destroys the security and bars all attempts at non-judicial foreclosure in Arizona, California, Nevada, or Oregon.[4] The Ninth Circuit Court

---

[3] Accordingly, there are no important factual disputes between the parties. Either the operation of the MERS system, as it is alleged to operate, violates the Deeds of Trust statues in such a way to render all non-judicial foreclosure of any Deed of Trust naming MERS as a beneficiary illegal, or Plaintiffs have no recoverable claim.

[4] It is true that some Courts have found MERS to be less than a traditional beneficiary in that it holds the deed of trust, but not the accompanying mortgage note and the payments made on account of such loans. This type of "splitting of the note from the deed of trust" does affect the parties' legal rights and thus, when MERS or a participant in the MERS system has needed a Court to grant affirmative relief—for example, when it needs relief from an automatic stay in a bankruptcy court—Courts have occasionally refused to grant that relief. *See In re Hawkins*, No. BK-S-07-13593-LBR, 2009 WL 901766 (Bankr. D. Nev. Mar.

1   of Appeals has explained that even granting that "MERS is a sham beneficiary and the note

2   is split from the deed," plaintiffs' alleged conclusion that, "as a necessary consequence, no

3   party has the power to foreclose" does not hold. *Cervantes v. Countrywide Home Loans*, No.

4   09-17364, slip. op at 16 (9th Cir. Sep. 7, 2011).

5          *B. Plaintiffs Maintain  MERS Assignments Are Invalid.*

6          Secondly, Plaintiffs maintain that MERS' assignments purported to transfer the

7   promissory notes "which MERS never possessed and could not assign" and, thus, the

8   assignments were "null and void." (Doc. 1515 at 15.)  As specifically agreed to by the

9   Plaintiffs in their Deeds of Trust, MERS holds legal title to the secured interests and is the

10  beneficiary or lienholder of record, as the nominee or agent for Plaintiffs' lenders and the

11  lenders' "successors and assigns." That is, MERS serves as the beneficiary on Plaintiffs'

12  Deeds of Trust, as the nominee or agent for "any valid note holder." *Kiah v. Aurora Loan*

13  *Servs., LLC*, No. 10-40161-FDS, 2011 WL 841282, at *4 (D. Mass. Mar. 4, 2011).

14            **FIRST CLAIM FOR RELIEF: VIOLATION OF A.R.S. § 33-420**

15         To state a claim under A.R.S. § 33-420, Plaintiffs must allege that "[a] person

16  purporting to claim an interest in, or a lien or encumbrance against, real property, who causes

17  a document asserting such claim to be recorded in the office of the county recorder, knowing

18  or having reason to know that the document is forged, groundless, contains a material

19  misstatement or false claim or is otherwise invalid . . ." A.R.S. § 33-420(A).  Plaintiffs

20  (specifically named plaintiffs Bilyea, DeBaggis, Molina-Hernandez, Rinehimer, Robinson,

21  Silvas, and Stejic) allege Defendants caused to be recorded various assignments, substitution

22  of trustees, notices of trustee's sales and trustee's deeds upon sale, which were false

23

24  31, 2009)(denying relief from automatic stay in bankruptcy proceedings); *In re Vargas*, 396
    B.R. 511, 517 (Bankr. C.D. Cal. 2008) (same); *In re Agard*, 444 B.R. 231, (Bankr. E.D.N.Y.
25  2011) (same); *In re Veal*, 450 B.R. 897 ( B.A.P. 9th Cir. 2011) (overruling a grant of relief
    from automatic stay);  *Bellistri v. Ocwen Loan Servicing*, L.L.C., 284 S.W.3d 619 (Mo. Ct.
26  App. 2009) (denying relief to a foreclosure trustee appointed by MERS for lack of "interest"
    in the property).  But Plaintiffs' claims that are before this Court in this MDL, are not in this
27  posture.

28

documents because they "contained false claims, or were otherwise invalid based on MERS' status as making the assignments as 'beneficiary.'" Doc. 1424 at 24-25.  Plaintiffs also allege that the assignments were "robosigned," that is, notarized in blank prior to being signed on behalf of MERS.  *Id.* at 22.  This claim fails for several reasons.

First, the alleged falsity in this claims arises from the fundamental argument that the MERS recordation process splits the note from the deed of trust and renders the note unenforceable.  However, as discussed above, this Court does not find legal support for the proposition that the MERS system of securitization is so inherently defective so as to render every MERS deed of trust completely unenforceable and unassignable.  In as much as this claim is based on this alleged falsity, it is dismissed with prejudice.

Second, the purportedly untrue recordations are not of the type covered by the statute.  As explained by this Court, Arizona courts have interpreted § 33-420 to apply only to "some sort of document purporting to create an interest, lien, or encumbrance, such as a lis pendens, mechanics lien, or the deed of trust itself . . .  The Court could locate no authority applying this statute to assignments of mortgages and notices of trustee's sales." *Schayes v. Orion Fin. Group, Inc.*, CV-10-2658-PHX-NVW, 2011 WL 3156303, at *6 (D. Ariz. July 27, 2011) (collecting cases); *see also In re Vasquez*, No. 4:08-BK-15510-EWH, 2010 WL 3084975, at *1 (Bankr. D. Ariz Aug. 5, 2010) ("In recording the Assignment, [defendant] was not purporting to claim an interest in the Plaintiff's property.  A.R.S. § 33-420 simply does not apply to the facts here.").  Thus, there can be no claim for a violation of A.R.S. § 33-420 and this claim will be dismissed.

Third, the allegations of robosigning do not state a claim for two reasons. In the first place, Plaintiffs have not pled sufficient facts that parties who are represented to have signed the MERS Assignments, "did not sign the document, and/or did not have the authority to sign the document, and/or did not have knowledge of the representation contained in the document."  These legal conclusions are not supported by sufficient factual pleading.  Yet, even if these allegations were well pled, Plaintiffs lack standing to challenge the validity of the MERS assignments.  Even if an assignment were voidable, an action to declare an

assignment void could only be brought by someone who can demonstrate a concrete and particularized injury in fact that is fairly traceable to the challenged assignment. No such injury is alleged. Thus, Plaintiffs, as third-party borrowers, are uninvolved and unaffected by the alleged Assignments, and do not possess standing to assert a claim based on such. *See Bridge v. Aames Cap. Corp.*, 2010 WL 3834059, at *3 (N.D. Ohio, Sept. 29, 2010) ("Borrower certainly has an interest in avoiding foreclosure. But the validity of the assignments does not affect whether Borrower owes its obligations, but only to whom Borrower is obligated . . .).

Fourth, this claim is time-barred. Even if the recordations actually damaged Plaintiffs, that damage would have accrued at the time of recordation. *See State v. Mabery Ranch, Co.*, 165 P.3d 211, 227 (Ariz. Ct. App. 2007). Yet, as alleged, all documents at issue were recorded in the public records more than one year before Plaintiffs initiated this Claim for Relief, Plaintiffs claim is also barred for this reason.

Lastly, alleged Plaintiff DeBaggis is not a named Plaintiff in any member case of this MDL. Accordingly, Plaintiffs' claim cannot rest on allegations relating to Plaintiff DeBaggis.

### SECOND CLAIM FOR RELIEF: WRONGFUL FORECLOSURE

Despite this Court's Orders, Plaintiffs have again brought claims for wrongful foreclosure that do not improve those which have already been dismissed. The claim for wrongful foreclosure in the CAC does not advance any new factual allegations or legal theories and thus suffers from the same defects that previously prompted dismissal.

*A. Failure to Allege Lack of Default*

At the threshold level, the tort of wrongful foreclosure requires Plaintiffs to establish that they were not in default when the power of sale was exercised or that they are able to tender the debt owed on the mortgage. *See*, *e.g.*, *Cervantes*, No. 09-17364, slip. op at 15 (9th Cir. Sep. 7, 2011) (collecting cases). Otherwise, Plaintiffs would suffer no damage. Plaintiffs have not alleged, and apparently cannot allege, that they were not in default or have

so tendered.  Instead, Plaintiffs claim that lack of default need not be proven in this type of a wrongful foreclosure.  The law does not support their contention.

Nevada law is clear that "[a]n action for the tort of wrongful foreclosure will lie if the trustor or mortgagor can establish at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale." *Ernestburg v. Mortgage Investors Group*, No. 2:08-cv-01304-RCJ-RJJ, 2009 WL 160241, at *6 (D. Nev. Jan. 22, 2009) (internal citations and quotations omitted).  The plaintiff must establish that they were not "in default when the power of sale was exercised." *Id.* (citing *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev. 1983)). Plaintiffs' attempt to distinguish away these authorities is unavailing.

Although the Arizona state courts have not addressed whether they recognize the tort claim for wrongful foreclosure, the District of Arizona has tentatively recognized such a claim.  *See*, *e.g.*, *Herring v. Countrywide Home Loans, Inc.*, CV-09-2622-PHX-PGR, 2007 WL 2051394, at *5 (D. Ariz. 2007).  However, even if Arizona recognizes this tort, the same common law requirement for plaintiff to allege lack of default remains.

By failing to plead that their loans are not in default, Plaintiffs' claim for wrongful foreclosure is barred as a matter of law and will be dismissed for failure to state a claim.

*B. MERS and MERS-appointed trustees have power to foreclose*

Even if Plaintiffs' claim for wrongful foreclosure was not barred by their failure to plead absence of default, Plaintiffs' claim is premised on the overarching theories discussed above.  Again, the Court finds nothing wrongful with these foreclosures.  *See*, *e.g.*, *Orzoff v. MERS*, No. 2:08-cv-01512, 2009 WL 4643229, at *6 (D. Nev. Mar. 26, 2009) ("Plaintiff has cited no authority that is controlling upon this Court that holds MERS cannot have standing as a nominee beneficiary in connection with a non-judicial foreclosure proceeding under Nevada law. This Court has previously determined that MERS does have such standing."); *Vazquez v. Aurora Loan Servs.*, No 2:08-cv-01800, slip op. at 2 (D. Nev. Mar. 30, 2009) (loan documents sufficiently demonstrated standing by Defendants, including

1   MERS, "with respect to the loan and the foreclosure"); *Gonzalez v. Home American*
2   *Mortgage Corp.*, No. 2:09-cv-00244, slip op. at 7-9 (D. Nev. Mar. 12, 2009) (MERS and
3   successor trustee have the power to initiate non-judicial foreclosure without presenting the
4   note); *Ramos v. MERS, Inc.*, No. 2:08-cv-1089-ECR-RJJ, 2009 WL 5651132, at *3 (D. Nev.
5   Mar. 5, 2009) ("under the deed of trust, MERS was empowered to foreclose on the property
6   and to appoint [a] substitute trustee for purpose of conducting the foreclosure").

7       Plaintiffs contend that two cases cut against this trend: *Spinnato v. Regional Trustee*
8   *Services Corporation, et al.*, No. CV-09-02927  (Nev. 2d J. Dist. Jan. 12, 2011) (order
9   denying Motion to Dismiss) and *Kartman v. Ocwen Loan Servicing*, No.
10  2:09-cv-02404-GMN-PAL, 2010 WL 3522268 (D. Nev. Sept. 1, 2010).  Neither case
11  endorses the proposition that Nevada law prohibits the authorization of a foreclosure sale due
12  to the operation of MERS.  Therefore, for this additional substantive reason, Plaintiffs' claim
13  for wrongful foreclosure fails to state a claim as a matter of law.

14      *B. No Cause of Action for Wrongful Foreclosure in South Carolina*

15      South Carolina is a judicial foreclosure state and, thus, there is no cause of action for
16  wrongful foreclosure.[5]  Therefore, as to Plaintiffs Freeman and Youmans, this claim is
17  dismissed.

18      **THIRD CLAIM FOR RELIEF: VIOLATION OF NRS SEC. 107.080**

19      Plaintiffs' Third Claim, on behalf of the Nevada Plaintiffs, substantially overlaps with
20  Plaintiffs' Second Claim.  Nevada's non-judicial foreclosure statute, NRS Sec. 107.080 *et*
21  *seq.*, sets forth the specific requirements for exercise of the power of sale by a trustee.  A
22  court may void a trustee sale if there is a lack of substantial compliance with the statute. NRS
23  107.080(5)(a). *Chavez v. Cal. Recon. Co.*, 2010 WL 2545006, at *2 (D. Nev. Jun. 18, 2010).
24  What differentiates this claim from one for the tort of wrongful foreclosure is the limitedness
25  of the remedy: a private right of action for tort damages is barred. *Id.*

26

27      [5] Plaintiffs' cite outdated cases that have nothing in common with the facts of this case
    and were apparently included only because they are locatable by means of a Westlaw search
28  for (wrongful /5 foreclose!) within the database "South Carolina Cases."

1    Plaintiffs allege that Defendants have not substantially complied because the parties
2    which issued the commenced foreclosure were not proper parties either because the notes
3    were rendered unsecured by transfer or the MERS assignments were invalid.  As discussed
4    above, the Court rejects this overarching split the note theory and finds that MERS may
5    perform valid assignments.  Again, Courts in Nevada have consistently held that MERS
6    assignments are not cause to enjoin non-judicial foreclosure.  *See Roberts v. McCarthy*, No.
7    2:11–cv–00080–KJD–LRL, 2011 WL 1363811, at *4 (D. Nev. Apr. 11, 2011) ("Plaintiff's
8    principal contention–i.e., that Quality lacked standing such that foreclosure is improper–fails
9    as a matter of law.  As demonstrated above, a lender is permitted to nominate MERS as
10   nominee under the deeds of trust securing Plaintiff's note.  As the lender's nominee, MERS
11   is permitted to substitute Quality as successor trustee. Quality as trustee was permitted under
12   Nevada law to begin and complete foreclosure proceedings due to Plaintiff's default on his
13   home loan"); *Roybal v. Countrywide Home Loans, Inc.*, No. 2:10-cv-750-ECR-PAL, 2010
14   WL 5136013, at *4 (D. Nev. Dec. 9, 2010) ("MERS, as the nominee of the lender, has
15   authority to act on behalf of the holder of the promissory note . . . which includes the
16   authority for substitution of trustees.").

17   It may be that some of the Plaintiffs may be able to state facts that allow them to state
18   a claim under NRS § 107.080, just not based on the claims which were transferred to this
19   MDL.  For example, when considering the remanded claims in *Kartman v. Ocwen Loan*
20   *Servicing, LLC*, No. 2:09-cv-02404-GMN-PAL, 2010 WL 3522268 (D. Nev. Sept. 1, 2010),
21   the transferor court denied a motion to dismiss because the Defendant Trustee Corps was
22   substituted as trustee after it recorded the notice of default and election to sell, but before it
23   recorded the notice of trustee's sale.  The Court held, "In Nevada, the power of sale cannot
24   be exercised until one of two particular entities–the beneficiary or the trustee–or an agent
25   thereof," records the notice of default, as the Defendant was not such an entity when it
26   recorded that notice, it may be liable for wrongful foreclosure unless it could show that it was
27   acting on behalf of one of the proper parties.  *Id.*  But such case-specific issues are not within
28   the purview of this MDL.  Accordingly, this claim will also be dismissed.

1

**FOURTH CLAIM FOR RELIEF: VIOLATION OF O.R.S. § 86.735**

2       Plaintiffs here attempt to state a claim for violation of Oregon's non-judicial

3   foreclosure statute based on the operation of the MERS system and request tort damages. On

4   July 8, 2011, the single foreclosure alleged in this claim was rescinded. *See* Doc. 1544-1.[6]

5   Thus, Plaintiffs' claim will be dismissed as moot.

6       Beyond the issue's mootness, Defendants allegations do not appear sufficient to

7   support a claim for violations of O.R.S. § 86.735.  Some of Plaintiffs' MERS theories have

8   rejected by courts interpreting Oregon law. *See*, *e.g.*, *Beyer v. Bank of Am.*, No. CV

9   10-523-MO, 2011 WL 3359938, at *1 (D. Or. Aug. 2, 2011) ("MERS was a proper

10  beneficiary," under Oregon law, "[b]ecause MERS is named in the trust deed as the

11  beneficiary, which is to say the person for whose benefit the trust deed is given," and "MERS

12  granted Deutsche Bank National Trust Company ("Deutsche Bank") all beneficial interest

13  under the deed of trust."); *Richard v. Deutsche Bank Nat. Trust Co.*, CV 09-123-AC. 2011

14  WL 2650735, at *3 (D. Or. July 6, 2011) ("[T]he trust deed in the present case explicitly

15  names MERS as a beneficiary and specifically gives it the right to foreclose").  On the other

16  hand, at least one court has found the MERS system's failure to record all assignments to

17  violated O.R.S. § 86.735(1).  *Hooker v. Nw. Trustee Servs., Inc.*, CV 10-3111-PA, 2011 WL

18  2119103 (D. Or. May 25, 2011).  Regardless, this claim is dismissed as moot.

19

20

**FIFTH CLAIM FOR RELIEF:**
**AIDING AND ABETTING WRONGFUL FORECLOSURE**

21      Plaintiffs allege that Defendants MERSCORP and MERS, Inc. and Federal National

22  Mortgage Association ("Fannie Mae") committed the derivative tort of aiding and abetting

23

24

25

26

27      [6] The Court takes notice of this officially recorded document pursuant to Fed. R. Evid.

28  201(b).

a tortfeasor by substantially assisting the torts of wrongful foreclosure set forth in their Second, Third and Fourth Claims for relief.[7]

### A. Lack of an Underlying Tort

Aiding and abetting is a derivative tort for which Plaintiff may recover only if there is an independent primary tort. *See Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12 (Ariz. 2002). As discussed above, because Plaintiffs have not adequately stated a claim for the underlying tort of wrongful foreclosure, the Court will dismiss the derivative claim as well.

### B. Liability of Shareholders or Directors of MERS and MERSCORP

Plaintiffs further allege that Defendants who participated "as shareholders, directors, operators, or members of MERSCORP, Inc. and/or MERS, Inc."are all liable under a veil piercing theory of recovery. To recover against these parties, Plaintiffs would required to allege that the MERSCORP shareholders and MERS operated as a single economic entity and that MERS committed fraud or injustice in its use of the corporate form. *In re Foxmeyer Corp.*, 290 B.R. 229, 236 (D. Del. Bankr. 2003). This is a "demanding" factual standard. *Am. Bell, Inc. v. Fed'n of Tele. Workers*, 736 F.2d 879, 886 (3d Cir. 1984). Plaintiffs have not made any effort to allege facts to show that this case is one of the "specific, unusual circumstances" where the courts will curtail limited liability. *Id.* Instead, Plaintiffs maintain that they do not need to "have established anything in the Complaint." Plaintiffs bare allegations that the shareholders "participated" in the creation of MERS is not enough to survive the motion to dismiss. Thus, for this additional reason Plaintiffs' claim for Aiding and Abetting Wrongful Foreclosure will be dismissed.

**SIXTH CLAIM FOR RELIEF: AIDING AND ABETTING PREDATORY LENDING**

Plaintiffs allege that Defendants GE Money Bank, Bank of American, Deutsche Bank and, perhaps, "the MERS system" committed the derivative tort of aiding and abetting

---

[7] As discussed above, a violation of Nevada's non-judicial foreclosure statute, NRS Sec. 107.080, does not give rise to a private right of action for tort damages. Thus, the only underlying torts must be those pled in the Second and Fourth Claims.

1   predatory lending.  In the CAC, the allegations are all loan origination issues which have

2   been remanded to the respective transferor courts.  Plaintiff's response clarifies that the

3   alleged predatory lending "was facilitated by the churning of loans through the MERS

4   system" and without it "the Defendant aiders and abettors would not have had the means for

5   the rapid securitization and sale of notes generated through predatory lending." However, the

6   CAC does not allege sufficient facts to make such a link plausible.  Securitization–in and of

7   itself a legal activity–cannot  be the sole basis for extending  "aiding and abetting" liability

8   to all members of the MERS system.

9                       **SEVENTH CLAIM FOR RELIEF: UNJUST ENRICHMENT**

10       Plaintiffs set forth a claim for unjust enrichment.  In their Response, Plaintiffs state

11   "[t]his claim is limited from past pleading to include only claims on behalf of Nevada

12   homeowners who lost their homes to wrongful foreclosure." (Doc. 1515 at 40.)  To set forth

13   a claim for unjust enrichment under Nevada law, a plaintiff must allege that a defendant

14   unjustly retained money or property of another against fundamental principles of equity. *See*

15   *Asphalt Prods. Corp. v. All Star Ready Mix*, 898 P.2d 699, 700 (Nev. 1995).   Unjust

16   enrichment must be premised on some independent basis which establishes a duty on the part

17   of the defendant and the failure of the defendant to abide by that duty.  In and of itself, the

18   phrase "unjust enrichment" does not describe a theory of recovery.  Rather, it is a way of

19   describing the failure to make restitution where equity requires.

20       Here, the Court finds that Plaintiffs have failed to state any other claims for relief.

21   Thus, as a matter of law, Defendants cannot have been unjustly enriched and equity does not

22   demand any restitution.   Therefore, the Court will also dismiss the claim for unjust

23   enrichment for failure to state a claim.

24                       **EIGHTH CLAIM FOR RELIEF: SLANDER OF TITLE**

25       A claim for slander of title requires "false and malicious communications, disparaging

26   to one's title in land, and causing special damages." *Executive Mgmt., Ltd. v. Ticor Title Co.*,

27   963 P.2d 465, 478 (Nev. 1998).

28

Here, Plaintiffs have not sufficiently alleged the falsity of these communications.  Just as in *Ramos v. Mortgage Electronic Registrations* [sic] *Systems, Inc.*, No. 2:08-cv-1089-ECR-RJJ, 2009 WL 5651132, at *4 (D. Nev. Mar. 5, 2009), "Plaintiffs do not dispute that they were in default on their loan. Nor is it false that the property was to be sold at a trustee's sale. . . .  It is not clear, therefore, what Plaintiffs might assert to be false or malicious about the recorded notice."   The only alleged falsity in the CAC emerges from Plaintiffs' argument that the MERS recordation process splits the note from the deed of trust, renders the note unenforceable, and thus all subsequent action–including these recordations–are invalid and false.  As dealt with elsewhere in this Order, this argument is not supported by the law.

Plaintiffs also fail to plead malice, an essential element of a slander of title claim. *Rowland v. Lepire*, 662 P.2d 1332, 1335 (Nev. 1983).  The complaint repeatedly alleges that the trustee sale purchaser "knew or should have known" that it purchased wrongfully foreclosed property—but a slander of title claim requires a plaintiff to show particularized malice that the Defendant knew the documents were actually false. *See*, *e.g.*, *Bonner v. Specialized Loan Serv'g LLC*, No. 2:10-cv-1267 JCM, 2011 WL 1199998, at *4 (D. Nev. Mar. 28, 2011) ("A plaintiff alleging a claim for slander of title must meet a heightened pleading standard.").  Therefore, the Court will dismiss Plaintiffs' claim for slander of title for failure to state a claim.

**NINTH CLAIM FOR RELIEF:**
**VIOLATION OF OREGON'S UNLAWFUL TRADE PRACTICES ACT**

Oregon's Unlawful Trade Practices Act provides that a "person engages in an unlawful practice when in the course of the person's business, vocation or occupation the person . . . employs any unconscionable tactic in connection with sale, rental or other disposition of real estate, goods or services, or collection or enforcement of an obligation." O.R.S. § 646.607(1).  It further provides that a "person engages in an unlawful practice when in the course of the person's business, vocation or occupation the person does any of the following: . . . [m]akes false or misleading representations concerning credit availability or

1   the nature of the transaction or obligation incurred." O.R.S. § 646.608 (1)(k).  Plaintiffs Leon

2   and Rodriguez claim that Defendants MERS, Litton Loan Services, L.P., and LSI Title

3   Services of Oregon, L.P. violated the Act by making "misrepresentations."

4         Plaintiffs do not clearly specify any alleged misrepresentations, but it appears that it

5   somehow relates to Defendant representations to Plaintiffs that they were qualified for a loan

6   modification.  However, "A loan is not a 'good' or 'service' for UTPA purposes," and

7   "material nondisclosures or misrepresentations of a loan's attributes are not actionable under

8   the UTPA." *Cullen v. Investment Strategies, Inc.*, 139 Or. App. 119, 126 (Or. App. 1996).

9   Plaintiffs attempt, but fail, to draw a distinction that would save them from this exclusionary

10  rule.   Therefore, the Ninth Claim is also dismissed.

11

12                      **TENTH CLAIM FOR RELIEF:**
          **VIOLATION OF SOUTH CAROLINA UNFAIR PRACTICES ACT**

13        Plaintiffs Freeman and Youmans allege a violation of S.C. Code Ann. § 39-5-10,

14  South Carolina's Unfair Trade Practices Act.  To state a claim under this Act, a plaintiff must

15  allege: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or

16  commerce; (2) the unfair or deceptive act affected public interest; and (3) the plaintiff

17  suffered monetary or property loss as a result of the defendant's unfair or deceptive acts. See

18  *Wright v. Craft*, 372 S.C. 1, 23 (Ct. App. 2006).  Plaintiffs, in the CAC, fail to allege any of

19  these elements.

20        The designation of MERS as the beneficiary of record on Plaintiffs' Deeds of Trust,

21  a designation expressly agreed to by Plaintiffs, was not improper as discussed above.

22  Plaintiffs maintain that the legal conclusion that Defendants falsely identified MERS as a

23  beneficiary and falsely represented the identity of MERS' corporate officers.  Neither of

24  these representations, standing alone, can be the factual basis for a finding of an unfair or

25  deceptive act.  Additionally, Plaintiffs do not allege any facts which could support a finding

26  that Defendants' action adversely affected the public interest and do not allege that they

27  suffered monetary or property loss as a result of the alleged misconduct.  This final point

28  echos the barrier this complaint faced in alleging wrongful foreclosure; Plaintiffs, who

1  defaulted on their mortgage loans, do not and cannot plausibly allege that they suffered

2  monetary or property loss due to the alleged actions.  *See Wright v. Craft*, 372 S.C. 1, 23 (Ct.

3  App. 2006).  Without alleging lack of default, Plaintiffs cannot sustain this claim.  This

4  claims is also dismissed.

5

6  **ELEVENTH AND TWELFTH CLAIM FOR RELIEF:**
**DECLARATORY AND INJUNCTIVE RELIEF**

7       Plaintiffs also seek injunctive and declaratory relief.  However, for the various reasons

8  discussed above, the Court has already found that all of Plaintiffs' other claims before this

9  Court must be dismissed.  Therefore, any request for injunctive and declaratory relief

10  premised upon those counts must likewise fail.

11  **FEDERAL HOUSING FINANCE AGENCY'S MOTION TO DISMISS**

12       Defendant Federal Housing Finance Agency ("FHFA") as Conservator of Federal

13  National Mortgage Association and the Federal Home Loan Mortgage Corporation

14  (collectively the "Enterprises") filed a motion to dismiss the CAC (Doc. 1476).  In its

15  capacity as Conservator of the Enterprises, FHFA has intervened in nine cases pending in the

16  MDL. In each of these cases, FHFA contends that Plaintiffs are seeking relief prohibited by

17  federal statute.  As all claims in the CAC are dismissed without prejudice on other grounds,

18  this issue is moot.  However, the Court will still consider FHFA's argument.

19       The Housing and Economic Recovery Act of 2008 ("HERA") precludes courts from

20  taking any action that would "restrain or affect" the powers of FHFA as Conservator of the

21  Enterprises.  U.S.C. § 4617(f).  FHFA maintains that granting Plaintiffs's request to enjoin

22  foreclosures would impermissibly restrain or affect the Conservator from carrying out its

23  statutory mandate to preserve and conserve the assets of the Enterprises.  FHFA maintains

24  that alleged violations of state and federal law do not provide a court with jurisdiction to

25  interfere with a conservator or receiver's exercise of its statutory functions."  (Doc. 1476 at

26  10.)

27       Plaintiffs argue that FHFA is overbroad in its interpretation of the anti-injunction

28  provision of U.S.C. § 4617(f) and the Court concurs.  The Court does not see any authority

1   standing for the proposition that the FHFA, or a similarly situated entity, may never be

2   enjoined from bringing a non-judicial foreclosure.  If Plaintiffs overarching MERS argument

3   was correct, and the Enterprises had no enforceable interests in the properties at issue, then

4   FHFA would also lack any enforceable interest.  Thus, this Court will not grant FHFA's

5   motion to dismiss on this ground.

6                                    **LEAVE TO AMEND**

7           Plaintiffs do not explicitly seek leave of this Court to file amended complaints.

8   However, Plaintiffs have undertaken to remind the Court that it "should grant leave to amend

9   even if no request to amend the pleading was made, unless it determines that the pleading

10  could not possibly be cured by the allegation of other facts."  (Doc. 1515 at 48 n. 112

11  (quoting *Doe v. United States*, 58 F.3d 494, 496-97 (9th Cir. 1995) (internal quotations

12  omitted).))

13          Leave to amend a complaint is within the Court's sound discretion, and in exercising

14  this discretion, the Court must be guided by the command of Rule 15(a), which provides that

15  "leave shall be freely given when justice so requires."  *Allen v. City of Beverly Hills*, 911

16  F.2d 367, 373 (9th Cir. 1990) (citing Fed.R.Civ.P. 15(a)).  "In exercising its discretion[,] .

17  . . 'a court must be guided by the underlying purpose of Rule 15–to facilitate decision on the

18  merits rather than on the pleadings or technicalities.' . . . Thus, 'Rule 15's policy of favoring

19  amendments to pleadings should be applied with extreme liberality.'"  *Eldridge v. Block*, 832

20  F.2d 1132, 1135 (9th Cir. 1987) (citations omitted).  The Court should consider five factors

21  when assessing whether to allow leave to amend: (1) bad faith, (2) undue delay, (3) prejudice

22  to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously

23  amended the complaint.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  When dismissing for

24  failure to state a claim, the Court should grant leave to amend unless the Court determines

25  that the pleading could not possibly be cured by the allegations of other facts. *Doe v. United*

26  *States,* 58 F.3d 494, 497 (9th Cir. 1995); *Bonin v. Calderon,* 59 F.3d 815, 845 (9th Cir. 1995)

27  ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend.").

28

The Court finds that Plaintiffs' "request" for further amendment to their complaint was not done in bad faith, nor has it resulted from undue delay. Yet, in light of the numerous complaints that Plaintiffs have been allowed to file, the Court does find that there would be some level of prejudice to Defendants. Additionally, after reviewing Plaintiffs' CAC, the Court finds that factor four–futility–weighs heavily against granting leave to amend. Having already granted Plaintiffs several bites at the apple, it is unclear what factual details Plaintiffs could plead to cure the deficiencies discussed above.

Therefore, because the Court finds that further amendment of the governing complaint would prove futile, the Court will dismiss with prejudice.

## CERTIFICATION OF FINAL JUDGMENT

Rule 54(b) of the Federal Rules of Civil Procedure provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

As the Supreme Court instructs:

> A district court must first determine that it is dealing with a "final judgment." It must be a "judgment" in the sense that it is a decision upon a cognizable claim for relief, and it must be "final" in the sense that it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action."
>
> Once having found finality, the district court must go on to determine whether there is any just reason for delay. Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims. The function of the district court under the Rule is to act as a "dispatcher." It is left to the sound judicial discretion of the district court to determine the "appropriate time" when each final decision in a multiple claims action is ready for appeal. This discretion is to be exercised "in the interest of sound judicial administration."
>
> Thus, in deciding whether there are no just reasons to delay the appeal of individual final judgments . . . a district court must take into account judicial administrative interests as well as the equities involved. Consideration of the former is necessary to

1       assure that application of the Rule effectively "preserves the
2       historic federal policy against piecemeal appeals."

3   *Curtiss-Wright Corp. v. General Electric Co*., 446 U.S. 1, 7-8 (1980) (citations omitted).

4          In this Order, the Court is dismissing, for these seventy-two member cases, all claims

5   remaining as part of this MDL with prejudice.  Thus, this Order is clearly a final judgment.

6   While there are several member cases remaining, the Court finds no just reason to delay the

7   appeal of this final judgment.

8                                   **CONCLUSION**

9          Therefore,

10          **IT IS ORDERED** that Defendants' Motions to Dismiss (Doc. 1449, 1450, 1453,

11   1456, 1475, 1476, 1477, 1481, 1483 and 1488) are GRANTED.

12          **IT IS FURTHER ORDERED** that Plaintiffs' Consolidated Amended Complaint is

13   DISMISSED WITH PREJUDICE. Accordingly:

14          Member case CV-10-630-PHX-JAT (*Robinson*) is dismissed with prejudice.

15          Member case CV-09-2616-PHX-JAT (*Vargas*) is dismissed with prejudice.

16          Member case CV-10-78-PHX-JAT (*Lopez*) is dismissed with prejudice.

17          Member case CV-10-79-PHX-JAT (*Goodwin*) is dismissed with prejudice.

18   Additionally, Defendant MTC Financial Inc.'s Motion to Substitute Attorney of Record is

19   GRANTED.

20          Member case CV-10-80-PHX-JAT (*Green*) is dismissed with prejudice.  Additionally,

21   Defendant National Mortgage Association's Motion for Relief From Stipulated Order (Doc.

22   432) is GRANTED.

23          Member case CV-10-81-PHX-JAT (*Dalton*) is dismissed with prejudice.

24          Member case CV-10-215-PHX-JAT (*Stoffels*) is dismissed with prejudice.

25          Member case CV-10-216-PHX-JAT (*Hearne*) is dismissed with prejudice.

26          Member case CV-10-217-PHX-JAT (*Huynh*) is dismissed with prejudice.

27          Member case CV-10-219-PHX-JAT (*Youngren*) is dismissed with prejudice.

28          Member case CV-10-220-PHX-JAT (*Burke*) is dismissed with prejudice.

1    Member case CV-10-221-PHX-JAT (*Dalby*) is dismissed with prejudice.

2    Member case CV-10-401-PHX-JAT (*Huck*) is dismissed with prejudice.

3    Member case CV-10-413-PHX-JAT (*Gillespie*) is dismissed with prejudice.

4    Member case CV-10-414-PHX-JAT (*Duncan*) is dismissed with prejudice.

5    Member case CV-10-415-PHX-JAT (*Caffee*) is dismissed with prejudice.

6    Member case CV-10-417-PHX-JAT (*Huck*) is dismissed with prejudice.

7    Member case CV-10-425-PHX-JAT (*Vo*) is dismissed with prejudice.

8    Member case CV-10-427-PHX-JAT (*Ellifritz*) is dismissed with prejudice.

9    Additionally, the Motion of Withdrawal of Quarles & Brady LLP as Counsel of Record (CV-

10   10-427-PHX-JAT, Doc. 29) is GRANTED.

11   Member case CV-10-428-PHX-JAT (*McConathy*) is dismissed with prejudice.

12   Member case CV-10-455-PHX-JAT (*Barlow*) is dismissed with prejudice.

13   Additionally, Defendant Chase Home Finance, LLC's Motion to Expunge Lis Pendens (Doc.

14   1348, and CV-10-455-PHX-JAT, Doc. 52) is GRANTED.

15   Member case CV-10-456-PHX-JAT (*Sage*) is dismissed with prejudice.

16   Member case CV-10-459-PHX-JAT (*Freeto*) is dismissed with prejudice.

17   Member case CV-10-460-PHX-JAT (*Fitzgerald*) is dismissed with prejudice.

18   Member case CV-10-471-PHX-JAT (*Whalen*) is dismissed with prejudice.

19   Member case CV-10-474-PHX-JAT (*Greene*) is dismissed with prejudice.

20   Member case CV-10-482-PHX-JAT (*Greene*) is dismissed with prejudice.

21   Member case CV-10-483-PHX-JAT (*Saniel*) is dismissed with prejudice.

22   Member case CV-10-484-PHX-JAT (*Kwok*) is dismissed with prejudice.

23   Member case CV-10-487-PHX-JAT (*Fitzwater*) is dismissed with prejudice.

24   Member case CV-10-493-PHX-JAT (*Boyd*) is dismissed with prejudice.

25   Member case CV-10-702-PHX-JAT (*Mausert*) is dismissed with prejudice.

26   Member case CV-10-703-PHX-JAT (*Riehm*) is dismissed with prejudice.

27   Member case CV-10-704-PHX-JAT (*Roberts*) is dismissed with prejudice.

28   Member case CV-10-705-PHX-JAT (*Mikulaco*) is dismissed with prejudice.

1      Member case CV-10-706-PHX-JAT (*Tyler*) is dismissed with prejudice.

2      Member case CV-10-707-PHX-JAT (*Gutierrez*) is dismissed with prejudice.

3      Member case CV-10-1083-PHX-JAT (*Gothan*) is dismissed with prejudice.

4      Member case CV-10-1084-PHX-JAT (*Sieben*) is dismissed with prejudice.

5      Member case CV-10-1085-PHX-JAT (*Funk*) is dismissed with prejudice.

6      Member case CV-10-1086-PHX-JAT (*Sanchez*) is dismissed with prejudice.

7      Member case CV-10-1205-PHX-JAT (*Ludlow*) is dismissed with prejudice.

8      Member case CV-10-1206-PHX-JAT (*Habon*) is dismissed with prejudice.

9      Member case CV-10-1207-PHX-JAT (*Sedlmayr*) is dismissed with prejudice.

10      Member case CV-10-1208-PHX-JAT (*Camacho-Villa*) is dismissed with

11 prejudice.

12      Member case CV-10-1209-PHX-JAT (*Riger*) is dismissed with prejudice.

13      Member case CV-10-1210-PHX-JAT (*Youmans*) is dismissed with prejudice.

14      Member case CV-10-1418-PHX-JAT (*Gothan*) is dismissed with prejudice.

15 Additionally, the stipulation of certain parties to dismiss without prejudice (CV-10-1418-

16 PHX-JAT, Doc. 48) is DENIED AS MOOT.

17      Member case CV-10-1419-PHX-JAT (*Yeghiyaian*) is dismissed with prejudice.

18      Member case CV-10-1420-PHX-JAT (*Sandefur*) is dismissed with prejudice.

19      Member case CV-10-1421-PHX-JAT (*Spracklin*) is dismissed with prejudice.

20      Member case CV-10-1422-PHX-JAT (*Meyer*) is dismissed with prejudice.

21      Member case CV-10-1474-PHX-JAT (*Leon*) is dismissed with prejudice.

22      Member case CV-10-1547-PHX-JAT (*Stejic*) is dismissed with prejudice.

23 Additionally, Plaintiff Stejic's Renewed Motion to Remand (Doc. 1021) is DENIED AS

24 MOOT.

25      Member case CV-10-1548-PHX-JAT (*Molina*) is dismissed with prejudice.

26      Member case CV-10-1549-PHX-JAT (*Coleman*) is dismissed with prejudice.

27      Member case CV-10-1550-PHX-JAT (*Bilyea*) is dismissed with prejudice.

28      Member case CV-10-1551-PHX-JAT (*Rinehimer*) is dismissed with prejudice.

1    Member case CV-10-1874-PHX-JAT (*Harnist*) is dismissed with prejudice.

2    And member case CV-10-1875-PHX-JAT (*Vega*) is dismissed with prejudice.

3    **IT IS FURTHER ORDERED** that as Plaintiffs in member cases

4    CV-10-268-PHX-JAT (*Lee*), CV-10-457-PHX-JAT (*Mason*) CV-10-485-PHX-JAT (*Berilo*),

5    CV-10-488-PHX-JAT (*Evans*), CV-10-489-PHX-JAT (*Kartman*), CV-10-492-PHX-JAT

6    (*Bricker*), CV-10-494-PHX-JAT (*Golding*), CV-10-699-PHX-JAT (*Labasan*), CV-10-786-

7    PHX-JAT (*Beebe*), CV-10-1082-PHX-JAT (*Martinez*), CV-10-1087-PHX-JAT (*Kelley*), and

8    CV-10-1873-PHX-JAT (*Singh*) failed to join the Consolidated Amended Complaint, these

9    member cases are dismissed with prejudice for this failure as well as the reasons this Court

10   dismissed the CAC.

11   **IT IS FURTHER ORDERED** that the Motion for Leave to Withdraw as Counsel of

12   Record (Doc. 1495; CV-10-786-PHX-JAT, Doc. 20) is GRANTED.

13   **IT IS FURTHER ORDERED** that Defendant Federal Housing Finance Agency's

14   Motion to Intervene (Doc. 741) is DENIED AS MOOT.

15   **IT IS FURTHER ORDERED**, pursuant to the stipulation of the parties

16   (CV-10-485-PHX-JAT, Doc. 36) that Defendants Wells Fargo Bank N.A. and HSBC Bank

17   USA, N.A. are hereby dismissed with prejudice from member case *Berilo v. HSBC Mortgage*

18   *Corporation, USA, et al.*, CV-10-485-PHX-JAT, with each party to bear their own court

19   costs and attorneys' fees.

20   **IT IS FURTHER ORDERED**, pursuant to the stipulation of the parties (Doc. 1562),

21   that Defendant WMC Mortgage Corp. is hereby dismissed with prejudice from all of the

22   above listed member cases, the parties to bear their own attorneys' fees and costs.

23   **IT IS FINALLY ORDERED** that the Clerk of the Court shall enter judgment and

24   close the above listed member cases.

25   DATED this 3rd day of October, 2011.

26

27   _____

28   James A. Teilborg
     United States District Judge